CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
March 24, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JAVON LAMONT ARRINGTON, ) | |
|     Plaintiff, ) | Civil Action No. 7:23-cv-00719 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| NURSE HOBACK, *et al.*, ) | Chief United States District Judge |
|     Defendants. ) | |

**MEMORANDUM OPINION**

Javon Lamont Arrington, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging claims related to his medication and for retaliation against two nurses, Nurse Hoback and Nurse H. White. Defendants move for summary judgment, arguing that Arrington did not exhaust his administrative remedies. (Dkt. No. 18.) This motion will be granted.

I. BACKGROUND

**A. Plaintiff's Claims**

The allegations in Arrington's verified complaint relate to him being housed at Red Onion State Prison. He alleges that on October 12, 2023, Nurse Hoback denied him his medication without due process. He suffered from anxiety all day causing him to cry and suffer headaches. (Compl. 2, Dkt. No. 1.) In his second claim, Arrington alleges that Nurse White retaliated against him for writing an emergency grievance. He wrote "I do not receive meds when I threatened their nursing staff and have unruly behavior." (*Id.*) He was punished by Nurse White for stating "my face card located on the door" when asked for his state ID number. (*Id.*)

Arrington also submitted an affidavit with similar allegations as an attachment. (Dkt. No. 1-1.) He states that on October 18, 2023, he is "being retaliated against" at Red Onion and he fears "for my life." The affidavit states that Arrington received an unlogged response to his emergency grievance, dated October 12, where Nurse White made clear that he should "not receive meds". (*Id.*) After an argument with Nurse Hoback, who deliberately refused Arrington's medication as a form of punishment, Nurse White conspired with institutional staff to show that he is at risk of being denied his mental health medication. He continues to explain that he filed an attachment showing that he is being denied medication as punishment for unruly behavior. (*Id.* at 2.) He has been told that Nurse Hoback will crush his medicine and try to poison him. (*Id.*; Attachment, Dkt. No. 1-2.)

Arrington requests $50,000 in damages and emergency injunctive relief.

**B. Facts in Support of Defendants' Motion**

In support of their motion for summary judgment, defendants filed the declaration of T. Still, the grievance coordinator responsible for maintaining grievance files at Red Onion. (Still Decl. ¶ 1, Dkt. No. 19-1.)

Operating Procedure (OP) 866.1 is a mechanism for offenders to resolve complaints, appeal administrative decisions, and challenge the substance of procedures. The process provides corrections administrators a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner. (Still Decl. ¶ 4; *see also* Ex. A, Dkt. No. 24-1.)

All issues are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, issues related to institutional disciplinary hearings, State and Federal

2

court decisions, laws, and regulations, and matters beyond the control of the VDOC. Each inmate is entitled to use the grievance procedure for problem resolution. (Still Decl. ¶ 5.)

OP 866.1 provides that "[g]rievances are to be submitted within 30 calendar days from the date of occurrence/incident or discovery of the occurrence/incident." (*Id.* ¶ 6.)

Before submitting a regular grievance, the offender must demonstrate that he has made a good-faith effort to informally resolve his complaint by submitting a Written Complaint form to the appropriate department head. (Still Decl. ¶ 7.) Written Complaint forms are placed throughout the prison where inmates can access them, or an inmate can verbally ask to receive a form from prison staff. If an inmate does not receive a form after asking, the inmate should submit an offender request form to the Grievance Department to receive Written Complaint forms. Copies of offender request forms submitted to the Grievance Department are kept in the offender's grievance file. (*Id.*)

Prison staff are allotted fifteen calendar days to respond to an inmate's Written Complaint to ensure that the informal response is provided before the expiration of the thirty-day time period in which an offender may file his regular grievance. It is the inmate's responsibility to ensure the Written Complaint is submitted to the appropriate department within fifteen days of the original incident or discovery of the incident to ensure staff has sufficient time to respond to the Written Complaint before the grievance deadline. If an inmate does not receive a response to a Written Complaint after fifteen days, he must file the Written Complaint receipt with a grievance as proof of engagement in the informal process. (Still Decl. ¶ 8.)

Only one issue per grievance form is addressed. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a lawsuit. (Still Decl. ¶ 9.)

Those grievances that do not meet the filing requirements of OP 866.1 are returned to the offender within two working days from the date of receipt noting the reason for return on the intake section of the grievance form. Reasons include, but are not limited to, insufficient information, expired filing period, and repetitive filings. The offender is instructed how to remedy any problems with the grievance when feasible. A copy is made of all grievances returned to the offender with the justification for return noted on the back page of the grievance form. If an offender wishes review of the intake decision on any grievance, he may send the grievance to the Regional Ombudsman for a review within five calendar days of receipt. It is the inmates' responsibility to ensure the appeal is sent to the Regional Ombudsman before the expiration of the grievance review period. If appealed, the Regional Ombudsman will return the grievance with a response to the prison's grievance department. There is no further review of the intake decision. Submitting a regular grievance that is not accepted during the intake review does not satisfy the administrative exhaustion requirement. (Still Decl. ¶ 10.)

A receipt is generated for all regular grievances that meet the filing requirements and are accepted at intake. A copy of the receipt is sent to the inmate through the institutional mail. If the inmate does not receive the acceptance receipt or intake rejection response within two working days, he should send the Grievance Department a request form asking if the grievance had been received and/or processed. It is the inmate's responsibility to ensure the regular grievance is received by the Grievance Department. (Still Decl. ¶ 11.)

An offender may file an emergency grievance if he believes that there is a situation or condition which may subject him to immediate risk of serious personal injury or irreparable harm. The filing of an emergency grievance does not satisfy the exhaustion requirement. (Still Decl. ¶ 12.)

Arrington's deadline to submit a Written Complaint for failure to receive his medication from Nurse Hoback and for being retaliated against by Nurse White on October 12, 2023, expired on October 27, 2023 – fifteen days after Arrington was allegedly denied the medication and after Nurse White determined his condition was not an emergency. His deadline to submit a Regular Grievance expired on November 11, 2023 – thirty days after the alleged actions of Nurses Hoback and White. Arrington never filed a Written Complaint or a Regular Grievance on the actions of Nurses Hoback or White and the time for doing so has expired. (Still Decl. ¶ 14.)

C. **Plaintiff's Response**

In a response affidavit, dated April 12, 2024, Arrington states that he "did in fact turn in a written complaint" on or about October 12, 2023, and was "told by officers they had turned in my complaint." (Dkt. No. 22.) Arrington claims that the summary judgment motion was "created in order to conspire as a team to deliberately and unlawfully commit perjury to the court." (*Id.*) He also claims that exhaustion would have been futile because "nothing further could have been done to compensate my denied medication on that day of 10-12-23 so even if any other remedy or solution would have been given by relief on written complaint or Regular Grievance I would have still been faced with not receiving medication on that particular day." (*Id.*)[1]

II. ANALYSIS

A. **Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[1] Arrington also submitted a separate affidavit pertaining to his legal mail, referencing a separate lawsuit. The court does not consider this filing relevant to its analysis. (Dkt. No. 23.)

5

R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show the absence of a material fact dispute, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of fact precludes summary judgment. *Anderson*, 477 U.S. at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence is "so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

**F. Exhaustion**

"The Prison Litigation Reform Act ('PLRA') requires that inmates exhaust all available administrative remedies before filing an action challenging prison conditions in federal court." *Woodhouse v. Duncan*, 741 F. App'x 177, 177 (4th Cir. 2018) (citing 42 U.S.C. § 1997e(a)(1)). This "requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516,

532 (2002), and federal courts do not have discretion to waive it or to excuse a plaintiff's failure to exhaust administrative remedies that were otherwise available to him, *see Ross v. Blake*, 136 S. Ct. 1850, 1855–59 (2016). The PLRA also "'requires proper exhaustion,' which 'means using all steps that the agency holds out, and doing so properly,' to allow the agency a full and fair opportunity to address the issues on the merits." *Woodhouse*, 741 F. App'x at 178 (emphasis omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 217–18 (2007).

Although the PLRA's exhaustion requirement is "strict," it "does not operate as an absolute bar to prison litigation in federal court." *Griffin v. Bryant*, 56 F.4th 328, 335 (4th Cir. 2022). This requirement "hinges on the 'availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1859 (brackets omitted). A remedy is "available" when it is "'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth v. Churner*, 523 U.S. 731, 738 (2001)). Conversely, a remedy is not available when:

> (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Woodhouse*, 741 F. App'x at 178 (quoting *Ross*, 136 S. Ct. at 1859–60). These are the "three kinds of circumstances" where the Supreme Court has recognized that "an administrative remedy, although officially on the books, is not capable of use to obtain relief" in the prison context. *Ross*, 136 S. Ct. at 1859. "When the facts on the ground demonstrate that no such potential exists, the inmate has no obligation to exhaust the remedy." *Id.*

The record on this summary judgment motion is undisputed that Arrington did not file any Regular Grievances about the actions of defendants pursuant to OP 866.1. Arrington references an emergency grievance (*see* Dkt. No. 1-2), but it is established that such a grievance is not sufficient for exhaustion. *See Crichlow v. Clarke*, Civil Action No. 4:23-cv-000006, 2023 WL 2873377, at *3 (W.D. Va. Apr. 10, 2023). He also argues that the process would have been futile because it could not have remedied his missed medication. Some remedy could have been provided, and the fact that it would not have been satisfactory to him is not relevant to the court's analysis and does not demonstrate that administrative remedies were unavailable to him. *See Williams v. McCray*, No. 5:15-CT-3198-BO, 2017 WL 9478514, at *5 (E.D.N.C. Aug. 14, 2017) (noting that "the PLRA does not contain a futility exception") (citing *Booth v. Churner*, 532 U.S. 741, 741 n.6 (2001)); *Morris v. W. Reg'l Jail*, No. 3:17-CV-01148, 2017 WL 2080698, at *3 (S.D.W. Va. Aug. 22, 2017) (explaining that the Supreme Court "has repeatedly held that courts may not read futility or other exceptions into the PLRA that are not part of its textual mandate") (citing *Ross*, 136 S. Ct. at 1857).

For these reasons, defendants are entitled to summary judgment.

III. CONCLUSION

The court will grant defendants' motion for summary judgment in an appropriate order.

Entered: March 24, 2025.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge